## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | | |
|---|---|---|
| **AUDREY L. SIMMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:07-00790** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Claimant's application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case was referred to the undersigned United States Magistrate Judge by Standing Order filed December 6, 2007, to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 4.) Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 12 and 13.)

The Plaintiff, Audrey L. Simms (hereinafter referred to as "Claimant"), filed an application for DIB on August 15, 2005 (protective filing date), alleging disability as of March 18, 2003,[1] due to back trauma, diabetes, acid reflux, asthma, and high cholesterol.[2] (Tr. at 57, 58-62, 74.) The claim was denied initially and upon reconsideration. (Tr. at 40-42, 47-49.) On July 10, 2006, Claimant

---

[1] At the administrative hearing on January 17, 2007, Claimant amended her alleged onset date from March 18, 2003, to January 1, 2004. (Tr. at 422.)

[2] On reconsideration, Claimant reported the additional disabling impairments of tingling and burning in her hands, feet, and legs; increased back and leg pain; allergies; shortness of breath; and depression. (Tr. at 47.)

requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 50.) A hearing was held on January 17, 2007, before the Honorable Mark A. O'Hara. (Tr. at 416-62.) On April 23, 2007, the ALJ issued a decision denying Claimant's claim for benefits. (Tr. at 14-26.) The ALJ's decision became the final decision of the Commissioner on October 9, 2007, when the Appeals Council denied Claimant's request for review. (Tr. at 7-10.) On December 5, 2007, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. § 404.1520 (2006). If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. § 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of

2

disability. <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, <u>McLain v. Schweiker</u>, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. § 404.1520(f) (2006). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. <u>McLamore v. Weinberger</u>, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in

which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[3] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder

---

[3] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the amended alleged onset date, January 1, 2004. (Tr. at 16, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from a back disorder, obesity, diabetes mellitus, and asthma, which constituted a severe combination of impairments. (Tr. at 16, Finding No. 3) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or medically equal the level of severity of any listing in Appendix 1. (Tr. at 20, Finding No. 4.) The ALJ then found that Claimant had the residual functional capacity for light work as follows:

> [C]laimant has the residual functional capacity to do light work (lifting or carrying 20 pounds occasionally and 10 pounds frequently, stand or walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday) that involves no balancing or climbing ladders, ropes or scaffolds, other postural activities (climbing stairs or ramps, stooping, kneeling, crouching or crawling) only occasionally, and

5

avoids moderate exposure to vibration and concentrated exposure to extreme cold, the usual respiratory irritants (such as fumes, odors, dusts, gases, and poor ventilation), and workplace hazards (such as moving machinery and unprotected heights).

(Tr. at 20-21, Finding No. 5.) At step four, the ALJ found that Claimant could return to her past relevant work as a garment inspector as Claimant described the job and as performed in the national economy. (Tr. at 25, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant had not been under a disability from January 1, 2004, through the date of the decision. (Tr. at 25, Finding No. 7.) On this basis, benefits were denied. (Tr. at 25-26.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

Claimant's Background

Claimant was born on June 17, 1954, and was 54 years old at the time of the administrative hearing, October 13, 2005. (Tr. at 58, 423.) Claimant had a high school education and two years of child development classes through her employment as a habitation specialist. (Tr. at 80-81, 424.) In the past, she worked as a habitation specialist, cook, and garment inspector. (Tr. at 75-76, 82-90, 424-29, 456-57.)

The Medical Record

The Court has considered all evidence of record, including the medical evidence and will discuss it in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in (1) evaluating Claimant's subjective complaints in his pain and credibility assessment, (2) failing to find that Claimant's carpal tunnel syndrome was a severe impairment, (3) failing to give controlling weight to the opinion of Claimant's treating physician, (4) failing to consider Claimant's severe upper extremity impairment in concluding that Claimant was capable of returning to her past relevant work as an inspector, and (5) failing to pose a hypothetical question to the VE that took into account all of Claimant's impairments. (Document No. 12 at 13-19.) The Commissioner asserts that these arguments are without merit and that the ALJ's decision is supported by substantial evidence. (Document No. 13 at 11-20.)

1. Pain & Credibility.

Claimant first alleges that the ALJ incorrectly applied the two-step process mandated by Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996), and the Regulations in assessing Claimant's pain

7

and credibility, when he failed to consider explicitly the threshold question as to whether there was objective medical evidence capable of causing the pain alleged by Claimant. (Document No. 12 at 13-15.) Claimant further asserts that the ALJ referenced Claimant's physical therapy records, noting that Claimant had a fair to good response to treatment, "but did not note whether the claimant actually had a good response to therapy." (Id. at 14.) She further asserts that the ALJ incorrectly characterized the physical therapy records when he noted that Claimant's reported pain was at a level three out of ten, when on June 20, 2005, the record reflects that her pain was at a level six out of ten, and increased to levels nine or ten with increased activities of daily living. (Id. at 15.)

The Commissioner asserts that contrary to Claimant's allegations, the ALJ explicitly noted and applied the two-step pain and credibility process and stated his step one finding. (Document No. 13 at 11-13.) At step two of the pain and credibility analysis, the Commissioner asserts that the ALJ properly determined that Claimant's statements regarding the intensity, persistence, and limiting effects of Claimant's symptoms were not entirely credible. (Id. at 12-13.)

A two-step process is used to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (2006); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated. Id. at 595. When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective

medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence

of pain should be gathered and considered, but the absence of such evidence is not determinative.

Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are

considered to diminish her capacity to work to the extent that alleged functional limitations are

reasonably consistent with objective medical and other evidence.  20 C.F.R. §§ 404.1529(c)(4) and

416.929(c)(4) (2006).  Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your
> prior work record, your statements about your symptoms, evidence submitted by
> your treating, examining, or consulting physician or psychologist, and observations
> by our employees and other persons.  . . .  Factors relevant to your symptoms, such
> as pain, which we will consider include:
>
> > (i) Your daily activities;
>
> > (ii) The location, duration, frequency, and intensity of your pain or other
> > symptoms.
>
> > (iii) Precipitating and aggravating factors;
>
> > (iv) The type, dosage, effectiveness, and side effects of any medication you
> > take or have taken to alleviate your pain or other symptoms;
>
> > (v) Treatment, other than medication, you receive or have received for relief
> > of your pain or other symptoms;
>
> > (vi) Any measures you use or have used to relieve your pain or other
> > symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every
> > hour, sleeping on a board, etc.); and
>
> > (vii) Other factors concerning your functional limitations and restrictions due to pain
> > or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2006).

SSR 96-7p repeats the two-step regulatory provisions:

> First, the adjudicator must consider whether there is an underlying medically
> determinable physical or mental impairment(s)--i.e., an impairment(s) that can be

9

shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the

individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 21-22.) Contrary to Claimant's allegations, the ALJ explicitly found, at the first step of the analysis, that Claimant's "medically determinable impairments could reasonably be expected to generally produce the alleged symptoms." (Tr. at 24.) Thus, the ALJ made an adequate threshold finding and proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 21-25.) At the second step of the analysis, the ALJ concluded that Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. at 24.) Thus, the undersigned finds that Claimant's allegation that the ALJ failed to make the threshold finding is without merit.

The only other challenge Claimant makes to the ALJ's pain and credibility assessment is that she finds fault with the ALJ's characterization of Claimant's physical therapy records by minimizing Claimant's reported levels of pain. (Document No. 12 at 14-15.) Claimant asserts that the ALJ incorrectly characterized her pain as a level three out of ten, when on June 20, 2005, it clearly was

at a level six and increased to a level nine with activities of daily living. (Id. at 15.) The undersigned finds that Claimant is the one who has mischaracterized the physical therapy notes. On June 20, 2005, therapist Robert Schuetz acknowledged Claimant's complaints of back and bilateral leg pain, which she rated at a level six on a scale of zero to ten, but noted that the pain level increased to a nine with performance of Claimant's daily activities. (Tr. at 18, 213.) Mr. Schuetz assessed that Claimant should "do fair to good" with physical therapy and observed that Claimant has had some relief of back pain with therapy, which decreased her pain levels from a level six to levels three or four. (Id.) Mr. Schuetz further noted that she continued to have poor trunk range of motion. (Id.) In his decision, the ALJ correctly characterized Claimant's reported reduced pain levels after physical therapy, as stated in the medical records, which reduction implied a good response to physical therapy.

Claimant does not allege any further error in the ALJ's pain and credibility assessment. Accordingly, the undersigned finds that the ALJ properly considered the factors under 20 C.F.R. § 404.1529(c)(4), in evaluating Claimant's pain and credibility, and that the ALJ's pain and credibility assessment is supported by substantial evidence.

2. Severe Impairment.

Claimant next alleges that the ALJ erred in not finding that Claimant's carpal tunnel syndrome ("CTS") was a severe impairment. (Document No. 12 at 15-16.) Claimant asserts that the ALJ incorrectly noted that Claimant's left CTS did not satisfy the twelve month criteria of the Regulations. (Id. at 15.) Moreover, Claimant asserts that the ALJ improperly relied on the treatment notes from Jackson River Orthopedics in finding a non-severe CTS impairment. (Id. at 16.)

The Commissioner asserts that Claimant's argument is without merit because she failed to

12

demonstrate that her CTS met the twelve month durational requirement specified by the Regulations. (Document No. 13 at 14.) Specifically, the Commissioner notes that Claimant was diagnosed with CTS only on August 25, 2006, and that by October, 2006, which was one month post-CTS release on the right, she was able to flex and extend all of the joints in her hands and fingers with only residual surgical discomfort. (Id.) Consequently, the Commissioner contends that Claimant did not prove that her CTS lasted or was expected to last for a continuous period of twelve months and that the ALJ properly found that her CTS was a non-severe impairment. (Id.)

To be deemed disabled, a claimant must have an impairment or combination of impairments which is severe, meaning that it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c); 416.920(c) (2006). Basic work activities are the abilities and aptitudes necessary to do most jobs, including: physical functions such as sitting and standing; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. Id.; §§ 404.1521(b)(1)-(6); 416.921(b)(1)-(6). Conversely, "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis in original). An inconsistency between a claimant's allegations about the severity of an impairment and the treatment sought is probative of credibility. See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994). As discussed above, the determination whether a claimant has a severe impairment is made at the second step of the sequential analysis.

13

The medical evidence reveals that on July 8, 2004, Dr. Joe O. Othman, M.D., A.C.P., observed on physical examination, conducted at the request of the West Virginia Workers' Compensation Division, that Claimant's motor strength, reflexes, sensation to touch and pin prick, and range of motion of her shoulders, elbows, and wrists were normal with no evidence of swelling or tenderness. (Tr. at 17, 175.) On August 11, 2005, Dr. Saghir R. Mir, M.D., F.A.A.O.S., also evaluated Claimant at the request of the Workers' Compensation Division. (Tr. at 17, 238-59.) On physical examination, Claimant complained of some discomfort in the right wrist and elbow area. (Tr. at 17, 245.) However, Dr. Mir noted that the range of motion of Claimant's shoulders, elbows, wrists, forearms, and fingers was normal and there were no signs of CTS. (Id.) He observed that there was neither tenderness in Claimant's left elbow, signs of epicondylitis, nor atrophy of the hand muscles. (Id.) Phalen tests and Tinel signs of the wrists were negative. (Id.)

One year later, on August 25, 2006, Dr. Othman conducted EMG and nerve conduction studies ("NCS") of Claimant's upper extremities, which revealed moderately severe bilateral CTS, worse on the right side than on the left side. (Tr. at 17, 357-59.) Claimant was examined by C. Woodyard, PA-C, on September 26, 2006, at the request of Claimant's treating physician, Dr. Pam Butcher, for evaluation of both hands, primarily her right hand. (Tr. at 17, 339.) Claimant complained of pain associated with some tingling and numbness of the fingertips, primarily the middle and index fingers. (Id.) Claimant reported that the use of a wrist brace did not help alleviate the pain. (Id.) On examination, Mr. Woodyard observed no muscle atrophy in the hands, and noted that she had normal function of the wrists, fingers, elbows, shoulders, and neck. (Id.) The Phalen's test was positive. (Id.) Based on Dr. Othman's EMG/NCS, Mr. Woodyard diagnosed bilateral CTS with the right side greater than the left side. (Id.) Surgery was recommended and on September 28,

2006, Claimant underwent right CTS release by Dr. Joe M. Pack, D.O. (Tr. at 17, 335-36.)

Following the surgery, Mr. Woodyard noted that Claimant was doing well with a fairly significant improvement in her symptoms. (Tr. at 17, 338.) On examination, Claimant had good function of the fingers and hand. (Id.) On October 30, 2006, Claimant reported that her symptoms had improved but that she continued to have discomfort throughout the palm of her hand with touch. (Tr. at 17, 337.) On examination, Mr. Woodyard observed tenderness to palpation in the soft tissues of the right palm, but that Claimant was able to flex and extend all joints in her hands and fingers with only some generalized discomfort. (Id.) Mr. Woodyard diagnosed status post CTS release "with good relief of her symptoms but she still has some residual surgical discomfort." (Id.) Claimant was referred to physical therapy for evaluation and treatment. (Id.)

Based on the foregoing evidence, which the ALJ summarized in his decision, together with the absence of any assessed limitations or restrictions by Claimant's treating physicians, the ALJ concluded that Claimant's CTS was a non-severe impairment. (Tr. at 17.) As discussed above, Claimant's CTS release on the right was successful. (Id.) Moreover, the ALJ found that because Claimant was diagnosed with bilateral CTS only on August 25, 2006, which was improved with surgery on the right, she did not prove that her CTS had lasted or was expected to last for a continuous period of twelve months. (Id.)

The undersigned finds that the medical evidence of record supports the ALJ's decision that Claimant's CTS was treated successfully with surgery on the right and that she failed to satisfy the durational requirement of the Regulations. Accordingly, the undersigned finds that the ALJ's decision that Claimant's CTS was not a severe impairment is supported by substantial evidence of record and that Claimant's argument is without merit.

15

3. <u>Treating Physician's Opinion</u>.

 Claimant further alleges that the ALJ should have given controlling weight to the opinion of Dr. Pamela Butcher, D.O., Claimant's treating physician, that Claimant would "never hold meaningful employment." (Document No. 12 at 16-18.) Claimant asserts that Dr. Butcher's opinion was entitled greater weight than the opinion of Dr. Mir, who examined Claimant on only one occasion at the request of the Workers' Compensation Division. (<u>Id.</u> at 16-17.) Claimant further asserts that it was improper for the ALJ "to give great weight to Dr. Mir's findings on one issue and not on the other." (<u>Id.</u> at 17.) Claimant notes that though the ALJ determined that Claimant's knee impairments were non-severe impairments, Dr. Mir's report suggested that they were severe impairments. (<u>Id.</u>) Thus, Claimant contends that the ALJ may not parse Dr. Mir's opinion as to her various impairments. (<u>Id.</u>)

 The Commissioner asserts that because the issue of disability is reserved solely to the Commissioner, the ALJ properly determined that Dr. Butcher's opinion was not entitled to controlling weight. (Document No. 13 at 14-17.) The Commissioner notes that contrary to Dr. Butcher's opinion of disability, Claimant's back surgery was successful and that her leg symptoms improved after surgery. (<u>Id.</u> at 15.) Following Claimant's surgery, she required only conservative treatment with oral pain relievers from which she experienced no side effects. (<u>Id.</u>) Dr. Mir observed on exam some restriction of mobility in Claimant's back, but noted that she was able to stand unassisted, walk without a limp, had normal sensation to pin prick, and had fairly good range of upper extremity motion. (<u>Id.</u> at 15-16)

 The Commissioner further asserts that Dr. Butcher's opinion was inconsistent with the assessments of the state agency physicians, Drs. Reddy and Lambrechts, as well as with Claimant's

reported activities of daily living. (Document No. 13 at 16.) Accordingly, the Commissioner contends that Dr. Butcher's opinion of disability was not entitled to much weight, and therefore, the ALJ's decision is supported by substantial evidence. (Id. at 17.)

At steps four and five of the sequential analysis, the ALJ must determine the claimant's residual functional capacity for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2006). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

Opinions on a claimant's Residual Functional Capacity are issues that are reserved to the Commissioner. The Regulations state that:

> We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing

> of Impairments in appendix 1 to subpart P of part 404 of this chapter, your residual functional capacity . . . or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

See 20 C.F.R. § 416.927(e)(2) (2006).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do.  That is, the SSA need not accept only physicians' opinions.  In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

The Regulations state that opinions on these issues are not medical opinions as described in the Regulation dealing with opinion evidence (20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2)); rather, they are opinions on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e) and 416.927(e). For that reason, the Regulations make clear that "[w]e will not give any special significance to the source of an opinion on issues reserved to the Commissioner. . . ." Id. §§ 404.1527(e)(3) and 416.927(e)(3). The Regulations further provide that "[f]or cases at the Administrative Law Judge hearing or Appeals Council level, the responsibility for deciding your residual functional capacity rests with the Administrative Law Judge or Appeals Council." See 20 C.F.R. §§ 404.1545 and 416.946 (2006). However, the adjudicator must still apply the applicable factors in 20 C.F.R. § 416.927(d) when evaluating the opinions of medical sources on issues reserved to the Commissioner. See Social Securing Ruling ("SSR") 96-5p, 61 FR 34471, 34473 (1996).

Social Security Ruling 96-5p makes a distinction between an RFC assessment, which is "the adjudicator's ultimate finding of 'what you can still do despite your limitations,'" and a "'medical source statement,' which is a 'statement about what you can still do despite your impairment(s)'

18

made by an individual's medical source and based on that source's own medical findings." Id. SSR 96-5p states that "[a] medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)." Adjudicators "must weigh medical source statements under the rules set out in 20 C.F.R. § 416.927, providing appropriate explanations for accepting or rejecting such opinions." Id. at 34474.

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2006). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3),

(4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2006). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2006). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2006). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2006). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th

Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

The medical record reflects Claimant's treatment with Dr. Pam Butcher, D.O., Claimant's family physician, from July 19, 2004, through October 25, 2006, for diabetes mellitus, high cholesterol, gastroesophageal reflux disorder ("GERD"), chronic low back pain, and situational depression. (Tr. at 269-305, 348-56, 360-77.) From July 19, 2004, through January 25, 2005, Dr. Butcher diagnosed low back pain, degenerative disc disease, and disc herniation at L5-S1, for which she prescribed Lortab. (Tr. at 291-305.) Dr. Butcher continued to treat Claimant's complaints of back pain with Lortab, Flexeril, Ultram, and other medications, without reported side effect, and also diagnosed Claimant with diabetes mellitus, high cholesterol, and GERD. (Tr. at 269-291.) On January 25, 2005, Dr. Butcher noted that Claimant's cholesterol was high. (Tr. at 291.) On August 31, 2005, Dr. Butcher noted that Claimant's diabetes mellitus was uncontrolled, and remained uncontrolled through at least January 10, 2006. (Tr. at 269-279.) On December 5, 2005, Dr. Butcher prescribed Celexa 20mg for Claimant's complaints of depression. (Tr. at 271.) By January 10, 2006, Dr. Butcher reported that Claimant's depression was situational and had improved. (Tr. at 269-70.)

Claimant admitted to Dr. Butcher on January 10, 2006, that her sugar had been out of control due to her past attitude. (Tr. at 352.) Claimant further reported that she had been noncompliant with her Neurontin regimen. (Id.) Dr. Butcher assessed that Claimant's diabetes mellitus remained uncontrolled and advised her to continue her regular medication regimen pending lab test results. (Tr. at 353.) On May 1, 2006, Dr. Butcher again noted that Claimant had been "very noncompliant"

with taking medications for her diabetes, and strongly advised Claimant that if she did not start taking her medications, her diabetes would cause end stage damage. (Tr. at 349.)

On June 5, 2006, Claimant reported to Dr. Butcher increased, constant low back pain, which she described as a dull ache. (Tr. at 375.) Claimant indicated that her symptoms were aggravated by exertion and prolonged sitting or standing, and were relieved by rest and lying down. (Id.) Dr. Butcher noted that Claimant's symptoms were associated with incontinence of urine and leg weakness. (Id.) On examination, Claimant presented with tenderness of the lumbar paraspinals and Dr. Butcher prescribed Hydrocodone-Acetaminophen. (Tr. at 376.) Dr. Butcher noted that Claimant's mood and affect were normal. (Id.)

Dr. Butcher saw Claimant for a follow-up appointment on July 12, 2006, at which time Claimant reported that she felt well but complained of decreased energy and trouble sleeping. (Tr. at 372.) Dr. Butcher noted that Claimant had been compliant with her instructions. (Id.) On exam, Claimant's mood and affect were normal and she had lumbar paraspinal tenderness. (Tr. at 374.) On August 7, 2006, Claimant complained of dull aching back pain which radiated into her right leg that had been persistent for three weeks in duration. (Tr. at 368.) On examination, Dr. Butcher noted lumbar paraspinal tenderness and palpable tightness over the lumbar spine on the right side. (Tr. at 370.) Dr. Butcher prescribed Skelaxin and Lortab, and referred Claimant to Dr. Othman for wrist tenderness, which she believed was from CTS. (Id.)

On September 13, 2006, Dr. Butcher noted paresthesia over all of Claimant's fingers with compression over the bilateral carpal tunnels. (Tr. at 366.) She referred Claimant to a carpal tunnel specialist, Dr. Joe Pack, for evaluation. (Id.) Finally, on October 25, 2006, Claimant complained of chest pain of gradual onset for a period of one month. (Tr. at 360.) Claimant described the pain as

mild discomfort and heaviness in the substernal area with radiation to the right shoulder, back, and neck on the right side. (Id.) Her symptoms were relieved with antacids and belching. (Id.) Dr. Butcher assessed unspecified chest pain, ordered an electrocardiogram, prescribed Nexium, and referred Claimant to Dr. Thomas Von Dolen for cardiology workup. (Tr. at 362.)

In a general letter dated January 11, 2007, Dr. Butcher noted her treatment of Claimant beginning in July, 2004, following a work-related injury to her low back in 2003. (Tr. at 410.) Dr. Butcher noted Claimant's diagnoses of disc herniation at L5-S1, degenerative disc disease at L4-5 and L5-S1, as well as the modalities of treatment including physical therapy, pain management, epidural steroid injections, and microlumbar disectomy of the right L5-S1 in January, 2005. (Id.)The surgery resolved Claimant's pain in the right lower extremity, but Claimant's back pain persisted. (Id.) Dr. Butcher further noted that she followed Claimant on a three-month basis for her continued complaints of low back pain that limited her activities of daily living. (Id.) She noted that Claimant recently was placed on medication for depression, which stemmed from her inability to complete household tasks due to low back pain. (Id.) In view of Claimant's complaints and Dr. Butcher's ongoing treatment of her, Dr. Butcher opined that Claimant "will never hold meaningful employment." (Id.)

As previously discussed, the medical record also reflects Dr. Mir's examination of Claimant on August 11, 2005, conducted at the request of the Workers' Compensation Division. (Tr. at 238-59.) Dr. Mir extensively reviewed Claimant's prior treatment history. (Tr. at 238-43.) Claimant reported that surgery helped some of her right leg symptoms but she still had pain at her right lumbosacral and buttock area most of the time. (Tr. at 243.) Claimant's symptoms were constant and increased by prolonged sitting, standing, walking, and riding in a vehicle. (Id.) Lying down helped

alleviate her symptoms to some extent. (Id.) Claimant also reported aching neck pain with no radiation of pain to her arms or numbness, tingling, or weakness of the upper extremities. (Id.)

On physical examination, Claimant's cervical range of motion was fairly good and she had only minimal tenderness at the cerviodorsal and scapular areas. (Tr. at 244.) As stated above, Claimant's range of motion of her shoulders, elbows, wrists, forearms, and hands was normal with no signs of CTS. (Tr. at 245.) Claimant's hip range of motion was normal with no internal derangement. (Id.) Examination of Claimant's knees revealed slight swelling in the suprapatellar area of the right knee, with crepitus and tenderness. (Tr. at 246.) Nevertheless, Claimant was able to stand unassisted, walk without a limp, and had essentially normal sensation to pin prick. (Tr. at 250-51.) Seated straight leg raising was positive on the right at seventy degrees with back pain. (Tr. at 251.)

Dr. Mir opined that Claimant had reached maximum degree of medical improvement from her injuries of March 18, 2003, and that she was not temporarily totally disabled. (Tr. at 247.) Dr. Mir assessed a fifteen percent whole body impairment and noted that the impairment was nonprogressive. (Tr. at 248.)

In his decision, the ALJ rejected Dr. Butcher's "conclusory opinions" that Claimant was unable to work because an opinion on the issue of disability is reserved to the Commissioner. (Tr. at 24-25.) As additional grounds for rejecting the opinion, the ALJ found that Dr. Butcher's opinion was not supported "by the longitudinal record with its generally routine and conservative treatment," Dr. Butcher's own treatment notes, and the opinions of the other examining sources who found that Claimant was capable of working. (Tr. at 25.) Furthermore, the ALJ found that Dr. Butcher's opinion was "based principally on the claimant's reported symptoms and limitations to the

24

physician, rather than on objective findings." (Id.)

As noted above, the issue of disability is reserved solely to the Commissioner, and therefore, Dr. Butcher's opinion that Claimant was unable to work was not entitled to controlling weight. Nevertheless, the ALJ's decision that Dr. Butcher's opinion was inconsistent with the evidence of record and her treatment notes is supported by substantial evidence. Regarding Claimant's back impairment, the evidence of record demonstrated that Claimant's microdisectomy was successful in that she had improvement of her leg symptoms. (Tr. at 242, 410.) Though Claimant's back pain persisted, she was treated only conservatively with oral pain relievers, with no reported side effects. (Tr. at 364, 370, 372, 376.) On July 12, 2006, Dr. Butcher's treatment notes revealed Claimant's reports that she felt well with no complaints. (Tr. at 372.)

Contrary to Dr. Butcher's opinion of disability, Dr. Mir, as noted above, found that with respect to Claimant's back, she had some restricted range of motion, tenderness,  muscle spasm, and a slightly positive seated straight leg raising at seventy degrees with pain. (Tr. at 250-51.) However, Claimant was able to stand unassisted, walked without a limp, and had nearly normal sensation to pin prick. (Id.) Furthermore, Claimant's cervical range of motion was normal and the examination of her upper extremities was normal. (Tr. at 244-45.) Dr. Mir assessed only a fifteen percent whole body impairment. (Tr. at 248.)

Though a treating physician's opinion generally is entitled to greater weight, the ALJ may accord less weight to that opinion if there is persuasive contradictory evidence. Dr. Mir's objective findings, as opposed to Dr. Butcher's reliance on Claimant's subjective complaints, provided that persuasive contradictory evidence. The ALJ's decision to reject Dr. Butcher's opinion, therefore, was supported by substantial evidence. As evidenced above, the ALJ properly found that Dr.

Butcher's opinion was inconsistent with her treatment notes and the generally conservative longitudinal treatment of Claimant.

Dr. Butcher's opinion of disability also was inconsistent with the assessments of the state agency physicians, which were adopted by the ALJ. (Tr. at 24.) Dr. Uma P. Reddy, M.D., opined on October 17, 2005, that Claimant was capable of performing light exertional work with occasional postural limitations, except that she should never climb ladders, ropes, or scaffolds. (Tr. at 260-68.) Dr. Reddy also opined that Claimant should avoid concentrated exposure to extreme cold, vibration, hazards, and fumes, odors, dusts, gases, and poor ventilation. (Tr. at 264.) On April 29, 2006, Dr. Marcel Lambrechts, M.D., also opined that Claimant could perform light exertional work with occasional postural limitations, but should never climb ladders, ropes, or scaffolds, or balance. (Tr. at 327-34.) He further opined that Claimant should avoid concentrated exposure to extreme cold, hazards, and fumes, odors, dusts, gases, and poor ventilation, and should avoid even moderate exposure to vibration. (Tr. at 331.)

As the Commissioner notes, Dr. Butcher's opinion of disability also was inconsistent with Claimant's reported activities of daily living. Though Dr. Butcher stated that Claimant could not "even complete simple household tasks due to her constant low back pain" (Tr. at 410.), Claimant's form Function Reports dated September 21, 2005, and January 25, 2006, reflect Claimant's reports that she prepared simple meals, watched television, dusted the house, did laundry, swept the floors, prepared dinner, washed dishes, made the bed, drove to the store, shopped for minimal grocery items, and shopped at department stores once a month. (Tr. at 91-98, 128-35.)

Based on the foregoing, the undersigned finds that the ALJ's decision to reject Dr. Butcher's opinion of disability is supported by substantial evidence of record and that Claimant's argument

on this issue is without merit.

4. <u>Upper Extremity Impairment/Hypothetical Question</u>.

Claimant next alleges that the ALJ failed to consider the severity of the impairments of Claimant's upper extremities in finding that she was capable of performing her past relevant work as a garment inspector. (Document No. 12 at 18-19.) Particularly, Claimant notes that in response to the ALJ's hypothetical question regarding "the usual carpal tunnel restrictions, which is avoiding repetitive use of the wrist," the VE responded that Claimant would be unable to perform any of her past relevant work. (<u>Id.</u> at 18-19.) Consequently, Claimant contends that because the VE testified that Claimant was unable to perform her past relevant work as a garment inspector, which required the repetitive use of her hands, then the ALJ erred at step four of the sequential analysis. (<u>Id.</u>)

Citing <u>Craigie v. Bowen</u>, 835 F.2d 56, 57-58 (3d Cir. 1987), the Commissioner asserts that the VE's testimony was in response to a hypothetical question based solely on Claimant's subjective complaints, and therefore, the ALJ was not required to credit it in his decision. (Document No. 13 at 17-18.) The Commissioner notes that Claimant's CTS surgery was successful and that she had good function of her fingers and hand thereafter. (<u>Id.</u> at 17.) Because the ALJ properly determined that Claimant's CTS did not satisfy the "twelve month durational requirement . . . this condition cannot provide a basis for a disability claim." (<u>Id.</u> at 18.) Consequently, the Commissioner contends that "the ALJ properly disregarded the VE's testimony which was based solely on [Claimant's] incredible subjective complaints relating to her carpal tunnel syndrome." (<u>Id.</u>)

To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments. <u>Walker v. Bowen</u>, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult

27

to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities – presumably, he must study the evidence of record to reach the necessary level of familiarity." Id. at 51. Nevertheless, while questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe. See Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983).

In the ALJ's hypothetical questions to the VE, he included all of Claimant's impairments that were supported by the record. (Tr. at 458-60.) The ALJ first asked whether a person of Claimant's age, education, and past relevant work experience, who was limited to light exertional work; could not climb ladders, ropes, or scaffolds; could occasionally climb stairs or ramps, stoop, kneel, crouch, and crawl; should avoid concentrated exposure to workplace hazards such as moving machinery and unprotected heights, extreme cold, and fumes, odors, dusts, gases, and poor ventilation; and should avoid even moderate exposure to vibration, could perform Claimant's past relevant work. (Tr. at 458.) In response to the ALJ's hypothetical, the VE responded that such person could perform Claimant's past relevant work as a garment inspector. (Id.) The ALJ then asked whether a person described in the first hypothetical, who was restricted from repetitive use of the wrists, could perform any of Claimant's past relevant work. (Tr. at 459.) The VE responded that these restrictions would eliminate the garment inspector job. (Id.) The ALJ further asked whether a person of Claimant's age, education, and past relevant work experience, could perform other jobs in the regional or national economy. (Id.) The VE responded that such person could perform the jobs of

28

an usher or lobby attendant. (Id.)

Claimant contends that in finding that Claimant was capable of performing her past relevant work as a garment inspector, the ALJ failed to acknowledge Claimant's residual symptoms of CTS, which the VE testified would preclude the ability to perform work as an inspector. As previously discussed, the evidence of record failed to demonstrate significant limitations resulting from Claimant's CTS. The Commissioner correctly points out that the limitations related to Claimant's CTS, as set forth in the ALJ's second hypothetical question to the VE, were based on Claimant's subjective complaints. As such, the ALJ was not required to credit the VE's testimony in response to the hypothetical. See Craigie v. Bowen, 835 F.2d 56, 57-58 (3d Cir. 1987)(stating that the ALJ was not required to credit VE testimony in response to the ALJ's hypothetical question based on a claimant's unsupported subjective complaints); Shuppe v. Astrue, __ F.Supp.2d __, 2008 WL 4296747, *6 (N.D. W.Va. Sept. 18, 2008)(The Court held that "[a]n ALJ is not required to accept the answer to a hypothetical question where such question is predicated upon unreliable evidence." The Court found that the ALJ was not required to accept limitations presented in a hypothetical that were premised upon the claimant's subjective complaints, which were not credited fully by the ALJ.); Harbour v. Astrue, 2008 WL 2222269, *12-13 (W.D. Va. May 27, 2008).

Because the ALJ found that Claimant was unable to demonstrate that her CTS symptoms satisfied the twelve month durational requirement, and because the ALJ found Claimant not entirely credible, the ALJ therefore, was not required to credit the VE's response to the hypothetical based on Claimant's subjective symptoms. Accordingly, the undersigned finds that the ALJ's decision not to credit the VE's testimony regarding Claimant's alleged CTS limitations is supported by substantial evidence and that Claimant's argument on this issue is without merit.

5. <u>Hypothetical Question</u>.

Finally, Claimant alleges that the ALJ's hypothetical questions posed to the VE failed to include all of her impairments, namely her depression, back disorder, and diabetes mellitus. (Document No. 12 at 19.) The Commissioner asserts that the ALJ's hypothetical questions accounted for all of Claimant's functional limitations that were supported by the objective medical evidence of record. (Document No. 13 at 18-20.)

In the ALJ's hypothetical questions to the VE, he included all of Claimant's impairments that were supported by the record. (Tr. at 458-60.) Regarding Claimant's depression, the ALJ determined that this condition was a non-severe impairment in part because Dr. Butcher noted that Claimant's depression improved with Celexa and that her mood and affect were normal. (Tr. at 20, 269-70, 352, 349, 374, 376.) Moreover, the state agency consultant, Dr. Timothy Saar, Ph.D., failed to find any limitations in Claimant's activities of daily living or social functioning due to a mental impairment, and found only mild difficulty in maintaining concentration, persistence, or pace. (Tr. at 20, 313-26.) The evidence of record therefore, as the ALJ determined, failed to support any significant limitations resulting from Claimant's depression or other mental impairment. Consequently, the ALJ was not required to include any limitations regarding Claimant's depression in his hypothetical questions to the VE.

Respecting Claimant's back impairment, Claimant alleges that the ALJ failed to include her back disorder in the hypothetical questions to the VE. (Document No. 12 at 19.) Contrary to Claimant's allegation, the transcript of the administrative hearing, which is discussed in detail above, demonstrates that the ALJ accounted for her back impairment by restricting her postural activities. As previously discussed, the evidence did not warrant further restrictions resulting from Claimant's

back impairment. Without further explanation from Claimant, the undersigned therefore finds that the ALJ properly accommodated the limitations resulting from Claimant's back impairment in his hypothetical questions to the VE.

Finally, Claimant argues that the ALJ failed to include her "impairments" related to diabetes mellitus in the hypothetical questions to the VE. (Document No. 12 at 19.) The ALJ determined that Claimant's uncontrolled diabetes mellitus was a severe impairment. (Tr. at 16, 19.)Nevertheless, he further found that the medical records failed to substantiate any significant diabetic symptoms or consequences. (Tr. at 19, 164-73, 220-37, 269-312.) The medical evidence essentially established only mild sensory deficits over the dorsal aspect of Claimant's feet. (Tr. at 19, 172.) As discussed above, Dr. Butcher noted on several occasions that Claimant was noncompliant with the treatment regimen for her diabetes. Claimant has not identified any specific limitations resulting from her diabetes which were not accommodated by the ALJ in his hypothetical questions. Accordingly, the undersigned finds that Claimant's argument is without merit and that substantial evidence supports the ALJ's decision.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the District Court confirm and accept the foregoing findings, **DENY** Plaintiff's Motion for Judgment on the Pleadings (Document No. 12.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 13.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and

72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984).  Copies of such objections shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

DATE: February 27, 2009.

R. Clarke VanDervort
United States Magistrate Judge

32